1
2025 CO 3 Nonhuman Rights Project, Inc., Petitioner-Appellant: v. Cheyenne Mountain Zoological Society and Bob Chastain. Respondents-Appellees: No. 24SA21Supreme Court of Colorado, En BancJanuary 21, 2025

Certiorari to the District Court El Paso County District
Court Case No. 23CV31236 Honorable Eric Bentley, Judge

Attorney for Petitioner-Appellant: Jacob Davis Washington,
District of Columbia

Attorneys for Respondents-Appellees: Brownstein Hyatt Farber
Schreck, LLP John W. Suthers Rosa L. Baum Denver, Colorado

Attorneys for Amici Curiae Association of Zoos &
Aquariums, Denver Zoo, and Pueblo Zoo: Arnold & Porter
Kaye Scholer LLP Robert Reeves Anderson Brian M. Williams
Denver, Colorado

Attorneys for Amicus Curiae Former Justice Edwin Cameron:
Schelhaas Law LLC Krista A. Schelhaas Littleton, Colorado

Attorney for Amici Curiae Law Professors Randall S. Abate,
Zsea Bowmani, Taimie L. Bryant, David N. Cassuto, Luis E.
Chiesa, Daniel W. Dylan, David S. Favre, Angela Fernandez,
Laura Fox, Pamela Frasch, Iselin M. Gambert, Sue
Grebeldinger, Jodi Lazare, Matthew Liebman, Justin Marceau,
Russ Mead, Rajesh K. Reddy, Jessica Rubin, Joan Schaffner,
Sarah Schindler, Kristen A. Stilt, Mariann Sullivan, Katie
Sykes, and Angie Vega: Chris Carraway Denver, Colorado

Attorneys for Amicus Curiae Maneesha Deckha: Fisher Byrialsen
PLLC Jane Fisher-Byrialsen Denver, Colorado

Attorneys for Amici Curiae Philosophers Gary L. Comstock,
Andrew Fenton, L. Syd M. Johnson, Robert C. Jones, Letitia M.
Meynell, Nathan Nobis, David M. Peña-Guzmán,
James Rocha, and Jeff Sebo: Killmer Lane, LLP David Lane
Denver, Colorado

Attorneys for Amici Curiae Shannon Minter and Evan Wolfson:
Roberta Nieslanik Imelda Mulholland Grand Junction, Colorado
Samler and Whitson, PC Hollis A. Whitson Denver, Colorado

Attorneys for Amici Curiae UK Animal Law Experts Joe Wills,
John Adenitire, Frances Allen, Stacy Banwell, Edie Bowles,
Rachel Dunn, Raffael Fasel, Marie Fox, Jeremy Frost, Bronwen
Jones, Joshua Jowitt, Carley Lightfoot, Samuel March, Anthony
Metzer, Tiffany Mitchell, Iyan Offor, Yoriko Otomo, Soraya
Pascoe, Alan Robertshaw, Debbie Rook, Paula Sparks, Reuben
Solomon, Katy Sowery, and Pearl Yong: The Law Office of Lucy
Deakins Lucy H. Deakins Denver, Colorado

Law
Office of Suzan Trinh Almony Suzan Trinh Almony Broomfield,
Colorado

JUSTICE BERKENKOTTER delivered the Opinion of the Court, in
which CHIEF JUSTICE MÁRQUEZ, JUSTICE BOATRIGHT,
JUSTICE GABRIEL, JUSTICE HART, AND JUSTICE SAMOUR joined.
JUSTICE HOOD did not participate.

OPINION

BERKENKOTTER, JUSTICE

¶1
This case comes to us on direct appeal of the dismissal of a
habeas corpus proceeding. The appeal requires us to decide
whether the liberty interests protected by the great writ of
habeas corpus extend to nonhuman animals. Petitioner Nonhuman
Rights Project, Inc. ("NRP") contends that the
district court erred in dismissing its habeas petition
because the five elephants that are the subject of the
petition, Missy, Kimba, Lucky, LouLou, and Jambo ("the
elephants"), lacked standing to seek relief via the
great writ.

¶2
For the reasons detailed below, we conclude that the district
court correctly held that Colorado's habeas statute only
applies to persons, and not to nonhuman animals, no matter
how cognitively, psychologically, or socially sophisticated
they may be. Accordingly, we affirm the judgment of the
district court.

I.
Background and Procedural History

¶3
Missy, Kimba, Lucky, LouLou, and Jambo are five elderly
African elephants that live at the Cheyenne Mountain Zoo
("CMZ"). NRP, a nonprofit corporation that
identifies its mission as seeking to secure legal rights for
highly intelligent nonhuman animals, filed a Verified
Petition for Writ of Habeas Corpus ("Petition") on
behalf of the elephants to secure their transfer to a
"suitable elephant sanctuary." In its Petition, NRP
asserted that the elephants were unlawfully confined at the
CMZ by respondents Cheyenne Mountain Zoological

Society and its President and CEO Bob Chastain (the
"Zoo"). NRP argued that the elephants have a right
to bodily liberty because they are autonomous and
extraordinarily cognitively and socially complex beings.

¶4
To support its request, NRP submitted affidavits from seven
animal biologists. According to the affidavits, elephants are
autonomous animals that generally have complex biological,
psychological, and social needs. Their brains, which are the
largest in absolute size of any land animal, hold nearly as
many cortical neurons (used to control executive functioning)
as humans' brains. Elephants, the affiants explain, share
numerous cognitive capacities with humans, including
self-awareness, empathy, awareness of death, intentional
communication, and the ability to learn and categorize. They
are, as well, highly social animals that have the capacity to
form long-lasting memories. This ability allows elephants to
gather and retain extensive social knowledge that accumulates
with age.

¶5
The affiants further observe that elephants are adept at
communication, using as many as forty-seven different call
types and more than three hundred gestures, signals, and
postures to share knowledge and information with each other.
In the wild, elephants travel tens of kilometers a day across
diverse terrain in highly organized social groups. And,
according to one of the affidavits submitted by NRP, when
deprived of exercise, a varied environment, and the

social opportunities that the wild provides, elephants suffer
from chronic frustration, boredom, and stress, resulting over
time in physical disabilities, psychological disorders, and,
often, brain damage.

¶6
The Zoo filed a motion to dismiss the Petition for lack of
subject matter jurisdiction and failure to state a claim on
which relief may be granted. In its motion to dismiss, the
Zoo vigorously disputed the factual allegations in the
Petition, pushing back against the suggestion that the
elephants were receiving anything short of remarkable care.
It argued that there was no legal basis for habeas relief
because the liberty interest guaranteed by the writ of habeas
corpus does not extend to nonhuman animals and because the
elephants at CMZ are not unlawfully confined. Further, the
Zoo argued that the court lacked subject matter jurisdiction
over the claim because the elephants do not have standing to
seek habeas relief.

¶7
The district court granted the Zoo's motion to dismiss.
As required in ruling on a motion to dismiss, the court
accepted the allegations in NRP's Petition as true,
including its assertion that elephants cannot function
normally in captivity. Addressing NRP's argument that the
common law has historically been used to extend the writ of
habeas corpus, the court noted that no U.S. court has
extended the right to nonhuman animals and, regardless, that
the right to habeas corpus in Colorado is a creature of
statute.

¶8
Turning to that statute, the court concluded that section
13-45-101, C.R.S. (2024), only authorizes habeas relief for
"any person" and does not extend to nonhuman
animals like the elephants. Thus, the court held that the
elephants did not have standing to seek habeas relief and
therefore the court did not have subject matter jurisdiction
to hear the case. The court additionally determined that NRP
did not have proper next friend status to bring a habeas
petition on the elephants' behalf because it failed to
establish that it was in a better position to speak for the
elephants than the Zoo.

¶9
Lastly, the court concluded that even if the elephants,
through NRP, had standing to bring the habeas petition, NRP
still had to make a prima facie showing that the elephants
are unlawfully confined and entitled to immediate release. To
make this showing, the court explained, a petitioner must
produce "evidence that, when considered in a light most
favorable to the petitioner and when all reasonable
inferences therefrom are drawn in the petitioner's favor,
would permit the court to find that the petitioner is
entitled to release." Cardiel v. Brittian, 833
P.2d 748, 752 (Colo. 1992).

¶10
The court acknowledged that, accepting NRP's allegations
as true, it had demonstrated the elephants would be better
off in an accredited elephant sanctuary. But it further
determined that NRP failed to prove that the elephants were
being confined in violation of any cognizable legal standard.
Indeed, the

court noted that "the Zoo holds the[] elephants under a
broad framework of laws that permit zoos to hold nonhuman
animals for public display in exactly the manner the Zoo is
doing." NRP did not, the court noted, assert that the
Zoo was violating any of those laws or standards. After
explaining that a petition for writ of habeas corpus must be
dismissed if it is insufficient on its face, §
13-45-101, the court granted the Zoo's motion to dismiss,
concluding that the elephants lack standing to bring a habeas
petition, but that even if they had standing, they are not
unlawfully confined.

¶11
NRP directly appealed the district court's
order.[1] For the reasons discussed below, we
affirm.

IL
Analysis

¶12
This case requires us to determine whether the liberty
interests protected by the writ of habeas corpus extend to
nonhuman animals. We begin by addressing our jurisdiction to
resolve this appeal. Then, we set out the appropriate
standard of review. Next, we address the historical
development of the writ of habeas corpus in the common law as
well as in Colorado's writ of habeas corpus statute. We
then discuss subject matter jurisdiction and the requirements
for standing.

Finally, applying the relevant statutes and case law, we
affirm the district court's holding that the elephants do
not have standing because, as we explain, habeas corpus
relief in Colorado is available only to persons, not nonhuman
animals.

A.
Jurisdiction

¶13
This case comes to us on direct appeal of the dismissal of a
habeas corpus proceeding. Colorado's habeas corpus
statute allows for the filing of a habeas petition by any
person who is being unlawfully detained by anyone, whether a
state actor or not. § 13-45-102, C.R.S. (2024). We have
direct appellate jurisdiction over habeas corpus proceedings
pursuant to article VI, section 2(1) of the Colorado
Constitution (giving the supreme court appellate jurisdiction
and a "general superintending control over all inferior
courts") and section 13-4-102(1)(e), C.R.S. (2024)
(prohibiting the Colorado Court of Appeals from having
initial jurisdiction over appeals from final judgments of
writs of habeas corpus). See also Diehl v. Weiser,
2019 CO 70, ¶ 8,444 P.3d 313,316 ("We have
jurisdiction over appeals from habeas corpus
proceedings.").

B.
Standard of Review

¶14
A C.R.C.P. 12(b)(1) motion to dismiss challenges a
court's subject matter jurisdiction. When, as here, the
resolution of the jurisdictional challenge involves no
disputed facts and instead presents a question of law, we
review the district court's ruling on a motion to dismiss
de novo. Jones v. Williams, 2019 CO 61, ¶ 7,
443 P.3d 56, 59.

Likewise, we review de novo issues of statutory
interpretation. Godinez v. Williams, 2024 CO 14,
¶ 19, 544 P.3d 1233, 1237. In interpreting a statutory
requirement, we must give effect to the General
Assembly's intent by first turning to the text and giving
words their plain and ordinary meanings. Jones,
¶ 7, 443 P.3d at 59 (citing Colorow Health Care, LLC
v. Fischer, 2018 CO 52M, ¶ 11, 420 P.3d 259, 262).
If the language is clear and unambiguous, then our analysis
ends there. Diehl, ¶ 13, 444 P.3d at 317.

C.
The Great Writ

¶15
Embodying the decree in the Magna Carta that no man would be
imprisoned contrary to the law of the land, the writ of
habeas corpus developed, albeit painstakingly, over hundreds
of years of English constitutional history. Boumediene v.
Bush, 553 U.S. 723, 740 (2008). "The writ was known
and used in some form at least as early as the reign of
Edward I" in the thirteenth century. Id.
"Over the centuries it has been the common law
world's 'freedom writ' by whose orderly processes
the production of a prisoner in court may be required and the
legality of the grounds for his incarceration inquired into,
failing which the prisoner is set free." Smith v.
Bennett, 365 U.S. 708, 712-13 (1961).

¶16
The writ "became 'an integral part of our common-law
heritage' by the time the Colonies achieved independence
and received explicit recognition in the Constitution."
Rasul v. Bush, 542 U.S. 466, 473-74 (2004) (citation
omitted)

(quoting Preiser v. Rodriguez, 411 U.S. 475, 485
(1973)). "The Framers viewed freedom from unlawful
restraint as a fundamental precept of liberty, and they
understood the writ of habeas corpus as a vital instrument to
secure that freedom." Boumediene, 553 U.S. at
739.

¶17
The writ of habeas corpus was first referred to as the
"great writ" by Chief Justice Marshall in Ex
parte Bollman, 8 U.S. (4 Cranch) 75, 96 (1807), because
of its role in preserving freedom against illegal restraint.
The right to habeas corpus has been described as "the
greatest of all writs" and the "precious safeguard
of personal liberty." Geer v. Alaniz, 331 P.2d
260,261 (Colo. 1958) (first quoting People ex rel.
Sabatino v. Jennings, 158 N.E. 613, 614 (N.Y. 1927); and
then quoting Bowen v. Johnston, 306 U.S. 19, 26
(1939)). The writ's "history is inextricably
intertwined with the growth of fundamental rights of personal
liberty." Pay v. Noia, 371 U.S. 391, 401
(1963), overruled in part on other grounds by Wainwright
v. Sykes, 433 U.S. 72 (1977). It is "not now and
never has been a static, narrow, formalistic remedy; its
scope has grown to achieve its grand purpose -the protection
of individuals against erosion of their right to be free from
wrongful restraints upon their liberty." Peyton v.
Rowe, 391 U.S. 54, 66 (1968). The writ's
"function has been to provide a prompt and efficacious
remedy for whatever society deems to be intolerable
restraints." Pay, 372 U.S. at 401-02. To that
end, the writ has profound historical importance as a means
to challenge various forms of unjust detention.

¶18
In Colorado, a court's authority "to hear habeas
corpus petitions derives from constitutional and statutory
grants of authority." Jones, ¶ 9, 443 P.3d
at 59. While the Colorado Constitution "grants the right
to seek a writ of habeas corpus," the statute
"makes it 'lawful ... to apply to the . . . district
courts for a writ of habeas corpus.'" Id.
(omissions in original) (first citing Colo. Const, art. II,
§ 21; and then quoting § 13-45-101(1)). Thus, both
the "Habeas Corpus [Statute] and the rules of this court
delineate the right which may be enforced with the Great Writ
of Habeas Corpus, and the procedure which is to be
followed." Ryan v. Cronin, 553 P.2d 754, 755
(Colo. 1976). This court has expressly stated that the habeas
corpus statute "carefully defines the circumstances
under which the relief authorized thereby may be granted. The
intervention by the judiciary ... is reserved for [the] most
serious violations of fundamental rights . ..."
White v. Rickets, 684 P.2d 239, 241 (Colo. 1984).

¶19
While habeas corpus petitions are typically filed to seek the
liberty of persons held in criminal custody by the state,
Colorado's habeas corpus statutes also allow for the
filing of a habeas petition by any person who is being
unlawfully detained by anyone, whether a state actor or
not.[2]
With this background in mind,

we turn to the requirements for a party to have standing and
to the issue of subject matter jurisdiction.

D.
Standing and Subject Matter Jurisdiction

¶20
"Standing represents a challenge to the court's
subject matter jurisdiction." Lobato v. State,
218 P.3d 358, 368 (Colo. 2009). As a preliminary matter, a
plaintiff must have standing to sue in order to bring a legal
action. Ainscough v. Owens, 90 P.3d 851, 855 (Colo.
2004). Thus, standing is a threshold issue that "must be
determined prior to a decision on the merits."
Hickenlooper v. Freedom from Religion Found., Inc.,
2014 CO 77, ¶ 7, 338 P.3d 1002,1006 (citing
Ainscough, 90 P.3d at 855). ¶21 To have
standing under Colorado law, "(1) the party must have
suffered injury-in-fact; and (2) this injury must be to a
legally protected interest." Aurora Pub. Schs. v.
A.S., 2023 CO 39, ¶ 26, 531 P.3d 1036, 1044. If the
court determines that a plaintiff does not have standing, it
must dismiss the case. Wimberly v. Ettenberg, 570
P.2d 535, 539 (Colo. 1977). We review de novo whether a
plaintiff has standing to sue. Ainscough, 90 P.3d at
856.

III.
Application

¶22
NRP contends that the district court erred in dismissing its
Petition because nonhuman animals are entitled to habeas
protection. We disagree.

¶23
As noted, in Colorado, the right to habeas corpus is defined
by statute. Thus, the question before us is "whether
[the legislature] has passed a statute actually [granting
standing to nonhuman animals]." Cetacean Cmty. v.
Bush, 386 F.3d 1169, 1176 (9th Cir. 2004). The statute
at issue here authorizes habeas petitions by persons
detained in circumstances other than criminal matters. It
states, in relevant part:

When any person not being committed or detained for
any criminal or supposed criminal matter is confined or
restrained of his liberty under any color or pretense
whatever, he may proceed by appropriate action as prescribed
by the Colorado rules of civil procedure in the nature of
habeas corpus which petition shall be in writing, signed by
the party or some person on his behalf, setting forth the
facts concerning his imprisonment and wherein the illegality
of such imprisonment consists, and in whose custody he is
detained. The petition shall be verified by the oath or
affirmation of the party applying or some other person on his
behalf.

§ 13-45-102 (emphasis added).

¶24
Colorado's habeas corpus statute does not define the term
"person." It is, however, defined by section
2-4-401, C.R.S. (2024), which contains definitions that
"apply to every statute, unless the context otherwise
requires." Under section 2-4-401(8),
"'Person' means any individual, corporation,
government or governmental subdivision or agency, business
trust, estate, trust, limited liability company, partnership,
association, or other legal entity." Looking to the
dictionary, the term "person" is defined as an
individual human being. See Person, Black's Law
Dictionary (12th ed. 2024) ("[a] human being");
Person, Merriam-

Webster Dictionary, https://
www.merriam-webster.com/dictionary/person
[https://perma.cc/6AX5-9MCH] ("human, individual").

¶25
Given the statutory definition of the term "person"
and the plain and ordinary meaning of the term found in the
dictionary, we conclude that the General Assembly's
choice of the word "person" demonstrates its intent
to limit the reach of section 13-45-102 to human beings. Our
conclusion is further bolstered by the fact that including
nonhuman animals in the definition of the term
"person" is the type of monumental change in the
law that one would reasonably expect the General Assembly to
make explicit. That is, "[i]f [the General Assembly]
intended to take the extraordinary step of authorizing
animals as well as people ... to sue, they could, and should,
have said so plainly." Cetacean Cmty., 386 F.3d
at 1179 (first alteration in original) (quoting Citizens
to End Animal Suffering &Exploitation, Inc. v. New
England Aquarium, 836 F.Supp. 45,49 (D. Mass. 1993)). By
stating that the statute applies to "any
person," the legislature made clear to whom the
statute applies. It does not include nonhuman animals.

¶26
NRP urges us to look to the common law, not to section
13-45-102, to determine the substantive scope of the
elephants' habeas corpus rights. According to NRP, the
common law writ of habeas corpus provides relief far broader
than that provided by Colorado's habeas corpus statute.
Again, we disagree. Regardless of how broadly the writ was
used in colonial times or well before then,

we need not look to the common law here because
Colorado's habeas corpus statute explicitly limits the
right to habeas corpus relief in Colorado to "per son
[s]." See Jones, ¶ 9, 443 P.3d at 59;
Ryan, 553 P.2d at 755; White, 684 P.2d at
241.

¶27
Indeed, even if the right to habeas corpus relief in Colorado
was defined solely by the common law, we would still not be
persuaded. This is because nothing in the common law supports
NRP's position, which rests primarily on a concurring
opinion and two dissenting opinions in its unsuccessful
efforts to extend the writ of habeas corpus to nonhuman
animals See Nonhuman Rts Project, Inc v Lavery, 100
N.E.3d 846,846-49 (NY 2018) (Fahey, J, concurring);
Nonhuman Rts. Project, Inc.v. Breheny, 197N.E.3d
921, 932-66 (N.Y. 2022) (Wilson, J., dissenting);
Breheny, 197 N.E.3d at 966-77 (Rivera, J.,
dissenting). We are not alone in rejecting NRP's attempt
to extend the great writ to nonhuman animals. NRP has
commenced similar legal proceedings in many other states on
behalf of elephants and chimpanzees living in zoos and other
facilities. Every one of its petitions for writ of habeas
corpus has been denied for the same or very similar reasons.

¶28
For example, in Breheny, NRP sought habeas corpus
relief on behalf of Happy, an elephant residing at the Bronx
Zoo. 197 N.E.3d at 923. There, the court dismissed the
petition after it held that the right to habeas corpus does
not extend

to nonhuman animals as it protects "the right to liberty
of humans because they are humans with certain
fundamental liberty rights recognized by law."
Id. at 927.

¶29
In Nonhuman Rights Project, Inc. v. R.LV.
Commerford & Sons, Inc., 216 A.3d 839, 840, 844
(Conn. App. Ct. 2019), the court dismissed NRP's petition
for a writ of habeas corpus on behalf of three elephants,
Beulah, Minnie, and Karen, at the Commerford Zoo. The court
examined its habeas corpus jurisprudence and stated that
there is "no indication that habeas corpus relief was
ever intended to apply to a nonhuman animal, irrespective of
the animal's purported autonomous characteristics."
Id. at 844. Further, the court held that elephants
are "incapable of bearing duties and social
responsibilities" required by the social compact that
forms the Connecticut Constitution and therefore the three
elephants did not have standing. Id. at 845; see
also Lavery, 100 N.E.3d at 846 (denying a motion for
leave to appeal the dismissal of habeas corpus proceedings
brought on behalf of Tommy and Kiko, two chimpanzees).

¶30
Simply put, no Colorado court, nor any other court in any
other jurisdiction in the United States has ever recognized
the legal "personhood" of any nonhuman
species.[3]

¶31
Courts have rejected these types of claims, among other
reasons, due to concerns regarding the unintended
consequences of recognizing nonhuman animals as persons. As
the Breheny majority recognized, "[granting
legal personhood to a nonhuman animal. .. would have
significant implications for the interactions of humans and
animals in all facets of life, including risking the
disruption of property rights, the agricultural industry [,]
... and medical research efforts." 197 N.E.3d at 929;
see, e.g., Lewis v. Burger King, 344 Fed.Appx. 470,
472 (10th Cir. 2009) (holding "Lady Brown Dog, as a dog
and putative co-plaintiff, lacks standing to sue under the
ADA (or any other civil rights statute)."). We recognize
these concerns, but far more importantly, we are persuaded
that if the General Assembly intended to recognize nonhuman
animals as persons entitled to habeas relief, it would have
explicitly said so.

¶32
We are also unpersuaded by NRP's assertion that habeas
corpus relief is based on a being's autonomous capacity.
Habeas protections flow from the status of being a person,
not from a being's ability to pass some type of
autonomous capacity test. As the Breheny majority
observed:

The selective capacity for autonomy, intelligence, and
emotion of a particular nonhuman animal species is not a
determinative factor in whether the writ is available as such
factors are not what makes a person detained qualified to
seek the writ. Rather, the great writ

protects the right to liberty of humans because they are
humans with certain fundamental liberty rights
recognized by law....

197 N.E.3d at 927 (emphasis added).

¶33
Finally, we observe that NRP is not actually seeking the
right to liberty -that is, freedom from captivity - for the
elephants. It conceded as much during oral argument,
acknowledging that it was not suggesting that the Zoo should
open its gates and set the elephants loose to roam free in
Colorado Springs and beyond, any more than it was suggesting
that very smart dogs could not be "kept" as house
pets. Instead, it asked to transfer the elephants from the
Zoo to a different confinement. The fact that NRP merely
seeks the transfer of the elephants from one form of
confinement to another is yet another reason that habeas
relief is not appropriate here. See White, 684 P.2d
at 242.

¶34
It bears noting that the narrow legal question before this
court does not turn on our regard for these majestic animals
generally or these five elephants specifically. Instead, the
legal question here boils down to whether an elephant is a
person as that term is used in the habeas corpus statute. And
because an elephant is not a person, the elephants here do
not have standing to bring a habeas corpus claim.

¶35
This is why the district court correctly concluded that it
lacked subject matter jurisdiction and had no choice but to
dismiss NRP's Petition. Since the elephants do not have
standing, we need not reach the question of whether the

Petition sets forth a prima facie case for their immediate
release from the Zoo. Last, we emphasize, like every other
court that has considered a similar appeal by NRP, that its
efforts to expand existing legal rights for nonhuman animals
- including for Missy, Kimba, Lucky, LouLou, and Jambo -are
best advanced through the legislative, not judicial, branch.

IV.
Conclusion

¶36
The district court properly concluded that Colorado's
writ of habeas corpus does not apply to nonhuman animals. We
therefore affirm.

---------

[1] The issues on appeal are as
follows:

1. Does the Petition make a prima facie case that
Missy, Kimba, Lucky, LouLou, and Jambo are entitled to
release?

2. Did the district court have subject matter
jurisdiction?

[2] There are two habeas corpus statutes
in Colorado. Section 13-45-101 grants a person the right to
apply for a writ of habeas corpus in criminal matters. It
also describes the procedures required when a writ is filed.
In contrast, section 13-45-102 provides for habeas relief in
civil cases but states that the "same
proceedings shall thereupon be had in all respects as are
directed in section 13-45-101." For clarity and ease of
reading, we refer to both throughout this opinion as
Colorado's habeas corpus statute.

[3] The one possible exception was walked
back in 2004 by the Ninth Circuit, which described its
suggestion in a 1988 opinion that an endangered Hawaiian bird
had "legal status," Palila v. Haw. Dep't of
Land & Nat. Res., 852 F.2d 1106,1107 (9th Cir.
1988), as non-binding dicta that was "little more than
rhetorical flourish[]." Cetacean Cmty., 386
F.3d at 1174.

---------